# COMMERCIAL GENERAL LIABILITY
# COVERAGE FORM

(b) The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; and

(2) The insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to.

5. "Impaired property" means tangible property, other than "your product" or "your work," that cannot be used or is less useful because:

a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

a. The repair, replacement, adjustment or removal of "your product" or "your work;" or

b. Your fulfilling the terms of the contract or agreement.

6. "Insured contract" means:

a. A lease of premises;

b. A sidetrack agreement;

c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e. An elevator maintenance agreement;

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

An "insured contract" does not include that part of any contract or agreement:

a. That indemnifies any person or organization for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

b. That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(1) Preparing, approving or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; or

(2) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage;

c. Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in b. above and supervisory, inspection or engineering services; or

d. That indemnifies any person or organization for damage by fire to premises rented or loaned to you.

7. "Loading or unloading" means the handling of property:

a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto;"

b. While it is in or on an aircraft, watercraft or "auto;" or

c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto."

8. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

 Copyright, Insurance Services Office, Inc., 1982, 1988 CG 00 01 11 85

a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles that travel on crawler treads;

d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

  (1) Power cranes, shovels, loaders, diggers or drills; or

  (2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

e. Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

  (1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

  (2) Cherry pickers and similar devices used to raise or lower workers;

f. Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos:"

  (1) Equipment designed primarily for:

    (a) Snow removal;

    (b) Road maintenance, but not construction or resurfacing;

    (c) Street cleaning;

  (2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

  (3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

9. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

10. "Personal injury" means injury, other than "bodily injury," arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

e. Oral or written publication of material that violates a person's right of privacy.

11. a. "Products-completed operations hazard" includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

  (1) Products that are still in your physical possession; or

  (2) Work that has not yet been completed or abandoned.

b. "Your work" will be deemed completed at the earliest of the following times:

  (1) When all of the work called for in your contract has been completed.

  (2) When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

  (3) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

c. This hazard does not include "bodily injury" or "property damage" arising out of:

Copyright, Insurance Services Office, Inc., 1982, 1988

# COMMERCIAL GENERAL LIABILITY
# COVERAGE FORM

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle created by the "loading or unloading" of it;

(2) The existence of tools, uninstalled equipment or abandoned or unused materials;

(3) Products or operations for which the classification in this Coverage Part or in our manual of rules includes products or completed operations.

12. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the "occurrence" that caused it.

13. "Suit" means a civil proceeding in which damage because of "bodily injury," "property damage," "personal injury" or "advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which you must submit or do submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which you submit with our consent

14. "Your product" means:

a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(1) You;

(2) Others trading under your name; or

(3) A person or organization whose business or assets you have acquired; and

b. Containers (other than vehicles), material, parts or equipment furnished in connection with such goods or products.

"Your product" includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product;" and

b. The providing of or failure to provide warnings or instructions.

"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

15. "Your work" means:

a. Work or operations performed by you or on your behalf; and

b. Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work;" and

b. The providing of or failure to provide warnings or instructions.

Copyright, Insurance Services Office, Inc., 1982, 1988

CG 00 01 11 88

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. CANCELLATION

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. CHANGES

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. EXAMINATION OF YOUR BOOKS AND RECORDS

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. INSPECTIONS AND SURVEYS

We have the right but are not obligated to:

1. Make inspections and surveys at any time;

2. Give you reports on the conditions we find; and

3. Recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

1. Are safe or healthful; or

2. Comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

## E. PREMIUMS

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Insurance Services Office, Inc. 1983, 1992

IL 00 21 11 94

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS POLICY
COMMERCIAL AUTO COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY NEW YORK DEPARTMENT OF
  TRANSPORTATION
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

   A. Under any Liability Coverage. to "bodily injury" or "property damage":

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954. or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage. to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage. to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material". if

      (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom:

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America. its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

   "Hazardous properties" includes radioactive, toxic or explosive properties.

   "Nuclear material" means "source material", "Special nuclear material" or "by-product material".

   "Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

   "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

Copyright, Insurance Services Office, Inc., 1994

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

(a) Any "nuclear reactor";

(b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

Copyright, Insurance Services Office, Inc. 1994
IL 00 21 11 94    □

COMMERCIAL GENERAL LIABILITY

THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY.

# EXCLUSION – FIRE DAMAGE LEGAL LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

1. The last paragraph of 2. EXCLUSIONS under Coverage A. (Section I) does not apply.
2. Paragraph 6. of LIMITS OF INSURANCE (Section III) does not apply.
3. Any reference in the Declarations to "Fire Damage Legal Liability" does not apply.

COMMERCIAL GENERAL LIABILITY
CG 21 49 10 93

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# TOTAL POLLUTION EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion f. under paragraph 2., Exclusions of COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I – Coverages) is replaced by the following:

This insurance does not apply to:

f.(1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.

(2) Any loss, cost or expense arising out of any:

(a) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fumes, acid, alkalis, chemicals and waste. Waste includes material to be recycled, reconditioned or reclaimed.

Copyright, Insurance Services Office, Inc. 1992

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**ASRRG 88 01 07 97**

### GENERAL AMENDATORY ENDORSEMENT

This Endorsement shall not serve to increase our limits of insurance, as described in SECTION III - LIMITS OF INSURANCE.

In consideration of the payment of premiums, it is hereby agreed that the following changes are incorporated into the policy.

A. The following shall be added to SECTION I, COVERAGE A., Par. 1. as subparagraph d., and to COVERAGE B., Par. 1. as subparagraph c. of the policy:

    d./c.  Any person shown as an Additional Insured on a certificate of insurance issued by us or our authorized representative, or by endorsement to the policy, shall be entitled to coverage hereunder solely for "claims" or "suits" for "bodily injury" or "property damage" arising solely out of your negligent performance of "your work". The limits of insurance provided to such Additional Insured shall be limited to the lesser of the limits of insurance required in a written contract for "your work", or the limits of insurance as described in SECTION III - LIMITS OF INSURANCE under the policy. No obligation for defense or indemnity under the policy is provided to any Additional Insured for "claims" or "suits" directly or indirectly "arising from" the status, actions or inaction, including (without limitation) for vicarious, derivative or strict liability of said Additional Insured, its agents, consultants, servants, contractors or subcontractors.

B. The following exclusions shall be added to SECTION I, COVERAGE A., Par. 2. as subparagraphs o. through u., and to COVERAGE B., Par. 2. as subparagraphs c. through i. of the policy.

This insurance does not apply to:

    o./c.  "Claims" or "suits" "arising from" the rendering of or failure to render any "professional services" by or for the insured.

    p./d.  "Claims" or "suits" "arising from": (1) the purchase, sale or distribution of securities, or investment counseling or management services; (2) antitrust, unfair competition, or restraint of trade; (3) unlawful, unfair, deceptive or fraudulent acts, or breach of any fiduciary duty; (4) criminal or civil fines, penalties or charges, or ~~violation of any civil, criminal, penal, statute or ordinance~~; (5) intentionally or grossly negligent tortious conduct, including "claims" for special, punitive or exemplary damages; (6) the development of, transfer or sale of real estate, or any defect in or impairment to title to real property, including fixtures; (7) employee, officer or director dishonesty or liability; (8) ~~failure to perform any contract or agreement~~; or (9) infringement of patents, trademarks, tradenames, copyright, software or similar rights.

    q./e.  "Claims" or "suits" "arising from": (1) the "disposal" of any "pollutant" at a "disposal site"; or (2) the performance of "your work" at a "landfill", unless such "landfill" is identified and reported to us as such, and such "landfill" site is specifically endorsed onto the policy; or (3) the performance of "your work" at a Superfund site identified under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, the Superfund Amendments and Reauthorization Act of 1986, or any state Superfund or Priorities list, unless such Superfund site is identified and reported to us as such, and such Superfund site is specifically endorsed onto the policy.

    r./f.  "Claims" or "suits" "arising from" "hazardous substance remediation" performed by a person or organization who is not an "acceptable hazardous substance remediation contractor".

    s./g.  "Claims" or "suits" "arising from" any "explosion hazard", "collapse hazard" or "underground hazard" as defined in the endorsement attached to the policy entitled "ENDORSEMENT — ADDITIONAL DEFINITIONS".

Copyright© 1997 American Safety Risk Retention Group, Inc.

**t./h.** "Claims" or "suits" "arising from" the presence of or exposure to radioactive material, nuclear material, nuclear fuel or nuclear waste as defined by 40 CFR §§190-192.

**u./i.** "Claims" or "suits" "arising from" "bodily injury", "property damage" or "personal injury" to any of the following persons whose designated job duties require them to be in a "hazardous substance remediation area" during your performance of "hazardous substance remediation":

1. An employee of the owner, lessee or real estate manager of the premises at which the "hazardous substance remediation" is performed;

2. An employee of the contractor for whom the insured is a subcontractor; or

3. An employee of a subcontractor of the insured.

**C.** The following changes are hereby incorporated into the policy:

1. SECTION I, COVERAGE A. and COVERAGE B., paragraphs 1.a.(2), are each deleted and the following language is inserted in lieu thereof:

   (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under COVERAGES A. or B., medical expenses under COVERAGE C., or any other "claim related costs".

2. SECTION I, COVERAGE A., Par. 2., Exclusion c. is amended to delete the last sentence, following subparagraph (3), and further, to add the following language:

   (4) Causing or contributing to the impairment of any person as a result of the furnishing, sale, use, distribution or serving of (a) illegal or controlled substances, including, but not limited to, any drugs or other similar substances of abuse; or (b) legal substances under circumstances where such activity is in violation of the law.

   (5) Violation of any statute, ordinance or regulation relating to the sale, gift, distribution or use of illegal or controlled substances, including, but not limited to, any drugs or other similar substances of abuse.

3. SECTION I, COVERAGE A., Par. 2., Exclusion e. is amended to add in the first subparagraph (1), following the word "employee", the words ", 'leased employee', 'borrowed employee' or

former employee"; and, to add, in the first subparagraph (2), following the word "sister", the words "or relative or friend"; and, to add, in the second subparagraph (1), following the word "employer", the words "or former employer,".

4. SECTION I, COVERAGE A., Par. 2., Exclusion f. is amended to delete the last paragraph (following subparagraph (2)(b)) and add, as the definition of "pollutants", the definition contained in the endorsement attached to the policy entitled "ENDORSEMENT — ADDITIONAL DEFINITIONS".

5. SECTION I, COVERAGE A., Par. 2., Exclusion g. is amended to delete paragraphs (1), (2), (3), (4) and (5).

6. SECTION I, COVERAGE B., Par. 2., is amended to add the following exclusion:

   j. All exclusions contained in SECTION I, COVERAGE A., Par. 2., shall also apply to this coverage part. For the purposes of this exclusion, all references to "bodily injury" or "property damage" shall also apply to "personal injury" and "advertising injury".

7. The last paragraph of SECTION I – SUPPLEMENTARY PAYMENTS COVERAGES A AND B is amended to delete the word "not", so that the paragraph will read as follows:

   "These payments will reduce the limits of insurance."

8. SECTION II, Par. 4 is deleted in its entirety and the following language is inserted in lieu thereof:

   4. Any organization you newly acquire, form, merge into or otherwise combine or affiliate with will be deemed to be an insured only if it is added by endorsement to the policy; in such event, COVERAGE A., COVERAGE B., COVERAGE C. and SUPPLEMENTARY PAYMENTS - COVERAGES A AND B do not apply to "bodily injury", "property damage", "personal injury" or "advertising injury" that occurred or arose before the organization is added by endorsement.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture, organization or other entity that is not shown as a Named Insured in the Declarations or by endorsement to the policy.

Copyright© 1997 American Safety Risk Retention Group, Inc.

9. SECTION III - LIMITS OF INSURANCE is deleted in its entirety and the following language is inserted in lieu thereof:

1. The Limits of Insurance shown in the Declarations and the rules below determine the most we will pay regardless of the number of:

   a. Insureds;
   b. "Occurrences";
   c. "Claims" made or "suits" brought;
   d. Persons or organizations making "claims" or bringing "suits"; or
   e. Certificates of insurance issued.

2. The General Aggregate Limit is the maximum amount we will pay for the sum of damages under COVERAGE A. and COVERAGE B.; for SUPPLEMENTARY PAYMENTS - COVERAGES A AND B; for COVERAGE C. MEDICAL PAYMENTS; and for all other "claim related costs". Upon exhaustion of the General Aggregate Limit, we shall have no obligation to make any further payments to or on behalf of any insured for defense, indemnification or otherwise.

3. Subject to the General Aggregate Limit provided in 2. above, the Products - Completed Operations Aggregate Limit is the most we will pay for the sum of damages under COVERAGE A.; for SUPPLEMENTARY PAYMENTS - COVERAGES A AND B; and for all other "claim related costs" "arising from" "bodily injury" or "property damage" included in the "products - completed operations hazard".

4. Subject to the General Aggregate Limit provided in 2. above, the Personal and Advertising Injury Limit is the most we will pay for the sum of damages under COVERAGE B.; for SUPPLEMENTARY PAYMENTS COVERAGES A AND B; and for all other "claim related costs" "arising from" "personal injury" or "advertising injury" caused by any one covered offense.

5. Subject to the General Aggregate Limit provided in 2. above, the Each Occurrence Limit is the maximum amount we will pay for the sum of damages under COVERAGE A.; for SUPPLEMENTARY PAYMENTS - COVERAGES A AND B; and for all other "claim related costs" "arising from" "bodily injury" or "property damage" caused by a single covered "occurrence".

6. Subject to the General Aggregate Limit provided in 2. above, the Fire Damage Legal Limit is the most we will pay for the sum of damages under COVERAGE A. and for all other "claim related costs" because of "property damage" to premises rented to you "arising from" any one fire.

7. Subject to the General Aggregate Limit provided in 2. above, the Medical Expense Limit is the most we will pay under COVERAGE C. for all medical expenses because of "bodily injury" sustained by any one person.

The General Aggregate Limit of this policy does not apply separately to each policy period, and, unless the policy is otherwise endorsed for an additional premium, for purposes of determining the General Aggregate Limit available to the insured, each policy period will be deemed part of the last and all other policy periods of any and every policy issued to you by us. Subject to a lower Limit of Insurance specified in a policy applicable to a particular policy period, the highest General Aggregate Limit specified in a policy (or in a certificate of insurance issued by us to you solely with respect to a specified project) will determine the maximum amount that we will be obligated to pay to or on behalf of all insureds under all policies or certificates issued by us to you or on your behalf, unless the policy is otherwise endorsed for an additional premium.

10. SECTION IV is amended as follows:

A. Par. 4., Other Insurance is hereby amended as follows:

   Paragraph a., Primary Insurance and Paragraph c., Method of Sharing are deleted in their entirety.

   Paragraph b., Excess Insurance, Subparagraph (3) is deleted in its entirety and the following language is inserted in lieu thereof:

   (3) That is valid and collectible insurance available to the insured, regardless of the nature, kind, date of issuance or limits of such other insurance available to the insured.

B. The following Conditions are added following Par. 9:

10. Company Guidelines. You acknowledge receipt of the "Company Guidelines", which are made a part of the policy. We reserve the right to replace, amend, change, supplement, modify, delete or terminate any or all of said "Company Guidelines" at any time in our sole discretion and we will notify you in writing of any such action. Neither

 Copyright© 1997 American Safety Risk Retention Group, Inc.