our development of the "Company Guidelines", nor the issuance thereof shall constitute an undertaking, by us or our representatives, of or for the insured's or any other person's or entity's benefit, to determine, warrant or guarantee that such "Company Guidelines" or the work of any insured pursuant thereto, are appropriate, consistent or in compliance with any law, rule, regulation, custom or practice. In the event that we or our representatives determine that the insured's operations are not in accordance with the "Company Guidelines" and/or that the insured take measures to correct its operations to adhere to the "Company Guidelines", the insured shall immediately do so, or obtain a waiver from us in accordance with the "Company Guidelines". A condition of coverage under the policy shall be that the insured has not intentionally or through gross negligence failed to comply with the "Company Guidelines", with such activity causing "bodily injury", "property damage", "personal injury" or "advertising injury".

11. **Inspection.** We shall have the right, but not the obligation, to inspect "your work", your property, documents and operations, wherever located, at any time and from time to time. The insured shall assure access by our representatives to all such areas and documents. Neither our right to make inspections nor the making thereof, nor the making of any report as a result thereof, shall constitute an undertaking, by us or our representatives, of or for the insured's or any other person's or entity's benefit, to determine, warrant or guarantee that such property or operations are safe, appropriate, or in compliance with any law, rule, regulation or the "Company Guidelines".

12. **Liability Of The Company.** The insured agrees that our liability hereunder shall be satisfied solely from our available funds and that our directors, officers, agents, managers, representatives, and shareholders shall have no liability hereunder to any insured.

13. **Assignment.** The insured shall not assign, transfer or otherwise confer upon another person or entity, whether voluntarily or by operation of law, any right, obligation or interest in the policy without our express written consent.

14. **Investigations.** It is expressly agreed by the insured that the undertaking, or agreement to undertake, by us, of any investigation, report, settlement or defense of any (1) "claim", notice, "suit", demand, complaint or similar matter; (2) "occurrence"; or (3) other fact or circumstance, shall not constitute either a waiver by us, or an estoppel on us to later assert any term, condition, provision or exclusion in the policy, or the applicability thereof to any such "claim", notice, "suit", demand, "occurrence" or complaint. It is agreed that any such action by us shall be undertaken with reservation of all rights.

15. **Reports.** A condition precedent to coverage under the policy shall be for the insured to notify us in writing of any discharge, dispersal, release or escape of "pollutants" from a "hazardous substance remediation area" as soon as possible, and in any event, not later than ten (10) days after the insured becomes aware of any such event.

16. **Application For Insurance.** The application made to us for insurance, including all statements and representations contained therein, is incorporated herein and made a part of the policy.

17. **Premium Computation.** Our rules and rates with respect to premium computation are incorporated herein and made a part of the policy.

11. SECTION V, Par. 6. is hereby deleted in its entirety and replaced with the definition contained in the endorsement attached to the policy entitled "ENDORSEMENT — ADDITIONAL DEFINITIONS".

All other terms, conditions and exclusions under the policy are applicable to this Endorsement and remain unchanged.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**ASRRG 88 02 07 97**

**SELF-INSURED RETENTION**

This Endorsement shall not serve to increase our limits of insurance, as described in SECTION III - LIMITS OF INSURANCE.

**SCHEDULE**

| Amount and Basis of Self-Insured Retention | |
|---|---|
| $ | per claim |
| $ [illegible] | per occurrence |

Application of Endorsement: (Enter below any limitations on the application of this endorsement. If no limitation is entered, the self-insured retention applies to all damages, however caused):

**NO LIMITATIONS**

1. Our obligation under the policy to pay damages or "claim related costs" to you or on your behalf applies only to the amount of damages or "claim related costs" in excess of any self-insured retention amounts stated in the Schedule above as applicable to such coverages, and the limits of insurance applicable to such coverages will not be reduced by the amount of such self-insured retention.

   As a condition precedent to our obligations to provide or continue to provide indemnity, coverage or defense hereunder, the insured, upon receipt of notice of any "claim", "suit" or incident that may give rise to a "claim" or "suit", and at our request, shall pay over and deposit with us all or any part of the self-insured retention amount as specified in the policy, requested by us, to be applied by us as payment toward any damages or "claim related costs" incurred in the handling or settlement of any such "claim" or "suit".

2. The self-insured retention amounts stated in the Schedule apply as follows:

   A. Per Claim Basis - if the self-insured retention is on a "per claim" basis, the self-insured retention amount applies separately to all damages and "claim related costs" because of "bodily injury", "property damage", "personal injury" or "advertising injury" sustained by any one person or organization as the result of any one "occurrence" or offense.

   B. Per Occurrence Basis - if the self-insured retention is on a "per occurrence" basis, the self-insured retention amount applies to all damages and "claim related costs" because of "bodily injury", "property damage", "personal injury" or "advertising injury" as the result of any one "occurrence" regardless of the number of persons or organizations who sustain damages because of that "occurrence" or offense.

All other terms, conditions and exclusions under the policy are applicable to this Endorsement and remain unchanged.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

**ASRRG 88 03 07 97**

**ENDORSEMENT -- ADDITIONAL DEFINITIONS**

This Endorsement shall not serve to increase our limits of insurance, as described in SECTION III - LIMITS OF INSURANCE.

It is hereby agreed that the following definitions are added to SECTION V of the policy.

1. "Acceptable hazardous substance remediation contractor" means a person or organization (other than an insured) retained by you under a written contract to undertake "hazardous substance remediation" for you or on your behalf, but only if such person or organization has been accepted by us by endorsement to the policy naming such person or organization as an "acceptable hazardous substance remediation contractor".
2. "Acids" means substances whose aqueous solutions have a pH level of less than 5.
3. "Alkalis" means the oxide of sodium, potassium or lithium.
4. "Animal/Bird Droppings" means excreta from animals or birds which harbor, or may harbor, pathogens, pathogenic organisms or other infectious microorganisms.
5. "Arising from" means arising out of, relating to or resulting from.
6. "Asbestos" means naturally occurring hydrated fibrous mineral silicates that possess a unique crystalline structure and are incombustible in air, including chrysotile, amosite, crocidolite, tremolite, anthophyllite, actinolite, and any material which contains "asbestos".
7. "Borrowed employee" means a person provided to you by a temporary labor or other firm to perform duties related to the conduct of your business.
8. "Claim" means any written demand, notice, request for defense, request for indemnity, or other legal or equitable proceeding against any insured by a person, entity or asserted class for damages because of "bodily injury", "property damage", "personal injury" or "advertising injury".
9. "Claim related costs" means all costs and expenses associated with the handling, defense and settlement of any "claim" or "suit", including, but not limited to, amounts for damages, medical expenses, attorneys' fees, reserves for indemnity or expense, court costs, arbitration or mediation costs or expenses, expert witness fees, investigative fees, adjustment fees and any other "claim" or "suit" related costs or expenses.
10. "Collapse hazard" means the collapse of or structural injury to any building or structure "arising from" the wrecking or taking out of any load-supporting structural member. The "collapse hazard" does not include the wrecking or taking out of any load-supporting structural member when such activities are performed by a contractor or subcontractor working for you or on your behalf, provided such contractor or subcontractor carries valid and collectible general liability insurance covering such operations and naming you as an additional insured, with an insurance carrier that is authorized in the state where such activities are performed. The "collapse hazard" also does not include the renovation of a building or modifying of any non-structural member that is not load supporting.
11. "Company Guidelines" means the "General Guidelines for Insureds" which are "in effect" at the time the policy is issued and/or while the policy is in force. "In effect", as used in this definition means the "Company Guidelines" which have been issued and sent in written form to you by us or by our duly authorized representatives, from time-to-time.
12. "Disposal" means all activities associated with the deposit of "pollutants" or other materials at a regulated or unregulated "disposal site".
13. "Disposal site" means any site other than a "hazardous substance remediation area" used for the deposit of "pollutants" or other materials.
14. "Explosion hazard" means blasting or explosion. The "explosion hazard" does not include the explosion of air or steam vessels, piping under pressure, machinery or power transmitting equipment.
15. "Hazardous substance remediation" means those activities, procedures or operations required to clean up, detoxify, dilute, remove, or abate "pollutants", including the removal of underground storage tanks.
16. "Hazardous substance remediation area" means the immediate area of a building, structure or property within which "hazardous substance remediation" activities are performed.
17. "Insured contract" means:
    (1) That part of any written contract or written agreement for the performance of "your work" under which you assume the tort liability of

another party to pay damages not otherwise excluded under the policy because of "bodily injury" or "property damage" to a "third party" "arising from" the performance of "your work" and caused by your negligence, if the contract or agreement is made prior to the incurring of the "bodily injury" or "property damage". Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

(2) An "insured contract" does not include that part of any contract or agreement:
   (a) That indemnifies another party for "claims" or "suits" "arising from" the performance of "your work" within 50 feet of any railroad or subway property;
   (b) Under which the insured assumes liability for "claims" or "suits" "arising from" the rendering of or failing to render "professional services";
   (c) Under which the insured agrees to indemnify, hold harmless, defend, make contribution to or share damages with another party for "claims" or "suits" directly or indirectly "arising from" the "third party's" negligence, actions, inactions or status, including (without limitation) for vicarious liability, derivative liability, strict liability or liability without fault; or
   (d) That indemnifies or agrees to make contribution to, or share damages with, another party for damage by fire to premises rented or loaned to or occupied by the insured.

18. "Landfill" means a regulated or unregulated "disposal site" used for the "disposal" of solid or liquid wastes on or beneath the land.

19. "Lead" means the heavy, ductile, soft, solid, naturally occurring metallic element used in paints, pipes, solder, pottery, and batteries, and substances containing "lead".

20. "Leased employee" means a person leased to you by a professional employer organization, employee leasing company, or other firm under a contract or agreement, to perform duties related to the conduct of your business.

21. "Medical waste" means any substance that could harbor or transmit pathogenic organisms, including, but not limited to body tissues, organs, body parts, body fluids, blood, excreta, secretions, bandages and hypodermic needles.

22. "Mold/Mildew/Fungus" means any plant-like group that does not produce chlorophyll and derives food either by decomposing organic matter from dead plants and animals or by parasitic attachment to living organisms.

23. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including, but not limited to "acids", "alkalis", "animal/bird droppings", "asbestos", chemicals, fumes, "lead", "medical waste", "mold/mildew/fungus", "radon", "refractory ceramic fibers", smoke, soot, vapor, waste or other dangerous, hazardous or toxic substances as listed by any state or federal agency or department. Waste includes materials to be recycled, reconditioned or reclaimed.

24. "Professional services" means:
   (1) The preparing, approving, recommending or failing to prepare, approve or recommend maps, drawings, opinions, reports, surveys, change orders, designs, specifications, hazard assessment plans, response actions, abatement methods or products, air monitoring plans or insurance requirements;
   (2) Supervisory, inspection, training or engineering services; or
   (3) Commercial or industrial hygiene, air monitoring, "pollutant" testing, laboratory analysis, public health, legal, accounting, architectural, medical, nursing, data processing, consulting or investment advisory services.

25. "Radon" means a colorless, odorless, tasteless gas produced from the radioactive decay of radium.

26. "Refractory-ceramic fibers" means continuous or non-continuous filaments made from ceramic material having those chemical and physical properties that allow them to be exposed to environments in excess of 1000°F (538°C).

27. "Third party" means any person or organization that is not an insured under the policy.

28. "Underground hazard" means "property damage" to wires, conduits, pipes, mains, sewers, tanks, tunnels, any similar property, and any apparatus in connection therewith located beneath the surface of the ground or water, caused by and occurring during the use of mechanical equipment for the purpose of grading land, paving, excavating, drilling, burrowing, filling, backfilling or pile driving.

All other terms, conditions and exclusions under the policy are applicable to this Endorsement and remain unchanged.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**ASRRG 88 04 07 97**

**ENDORSEMENT -- SERVICE OF SUIT CLAUSE**

This Endorsement shall not serve to increase our limits of insurance, as described in SECTION III - LIMITS OF INSURANCE.

It is agreed that the service of process in any "claim" or "suit" on the policy against American Safety Risk Retention Group, Inc. may be made upon the highest one in authority bearing the title "Commissioner", "Director" or "Superintendent" of Insurance of the state or commonwealth wherein the policy is issued. The one in authority bearing the title "Commissioner", "Director" or "Superintendent" of Insurance of the state or commonwealth wherein the policy is issued is hereby authorized and directed to accept service of process on our behalf in any such "claim" or "suit", provided such "Commissioner", "Director" or "Superintendent" has a procedure for forwarding "claims" and "suits" to insurance companies by registered or certified mail and agrees to abide by such procedure by mailing via registered or certified mail all documents so served to American Safety Risk Retention Group, Inc. at 1845 The Exchange, Suite 200, Atlanta, Georgia 30339. It is further agreed that the insured shall, by registered or certified mail, send to American Safety Risk Retention Group, Inc., a copy of all documents relating to the service of process in the "claim" or "suit" as the insured has delivered to the highest one in authority of the Insurance Department of the state or commonwealth wherein the policy is issued.

All other terms, conditions and exclusions under the policy are applicable to this Endorsement and remain unchanged.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**ASRRG 88 05 07 97**

**EMPLOYMENT-RELATED PRACTICES EXCLUSION**

This Endorsement shall not serve to increase our limits of insurance, as described in SECTION III - LIMITS OF INSURANCE.

The following exclusion is added to SECTION I, COVERAGE A. and COVERAGE B., Par. 2. of the policy:

This insurance does not apply to:

"Claims" or "suits" by:

(1) Any person "arising from" any:
   (a) Refusal to employ that person;
   (b) Termination of that person's employment;
   (c) Refusal or failure to promote that person;
   (d) Employment-related practices, policies, acts or omissions, including but not limited to coercion, promotion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or
   (e) Labor contract or agreement, or any employee benefit, or benefit plan or program, including, but not limited to, liability under the National Labor Relations Act, the Labor Management Relations Act, the Davis Bacon Act, the Employee Retirement Income Security Act of 1974, the Americans With Disabilities Act, or any workers' compensation or similar federal or state laws.
(2) The spouse, child, parent, brother or sister, or personal representative or administrator of that person as a consequence of the employment-related practices described in paragraphs (a), (b), (c), (d) or (e) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and
(2) To any obligation of the insured to share damages with or repay someone else who must pay damages because of the offense, injury, "claim" or "suit".

All other terms, conditions and exclusions under the policy are applicable to this Endorsement and remain unchanged.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**ASRRG 88 06 07 97**

**INCREASED LIMITS FOR SPECIFIED PROJECTS**

Except as specifically provided herein, this Endorsement shall not serve to increase our limits of insurance, as described in SECTION III - LIMITS OF INSURANCE.

In consideration of the payment of premiums, and any additional premium that may be required by us for increasing the limits of the policy for a specific project, site or location, it is hereby agreed and understood that, solely in the event a certificate of insurance is issued by us for the performance of "your work" at a specific project, site or location, which, at your request, displays limits of insurance greater than those described in the Declarations of the policy, the limits shown on the certificate of insurance issued by us shall apply solely with respect to "your work" at such specified project, site or location, but shall not serve to increase the limits of insurance at any other project, site or location. All payments made by us, whether for damages, "claim related costs" or otherwise, in connection with any "claim" or "suit" brought under the policy shall reduce the limits of insurance provided in this Endorsement, on the certificate, and in SECTION III - LIMITS OF INSURANCE of the policy. All payments made by us, whether for damages, "claim related costs" or otherwise under this Endorsement shall likewise reduce the limits of insurance provided under the policy.

All other terms, conditions and exclusions under the policy are applicable to this Endorsement and remain unchanged.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**ASRRG 88 07 07 97**

**LIMITED PRODUCTS LIABILITY COVERAGE ENDORSEMENT**

This Endorsement shall not serve to increase our limits of insurance, as described in SECTION III - LIMITS OF INSURANCE.

In consideration of the payment of premiums, it is hereby agreed that the following shall be added to SECTION I, COVERAGE A. and COVERAGE B., Par. 2. of the policy:

> This insurance does not apply to "claims" or "suits" "arising from" "your products". Provided, however, that this exclusion shall not apply to the specific product(s), if any, listed below, which are manufactured, distributed or sold by you:

| Product(s) |
|---|
| None |

All other terms, conditions and exclusions under the policy are applicable to this Endorsement and remain unchanged.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**ASRRG 88 14 07 97**

**ASBESTOS ABATEMENT LIABILITY COVERAGE ENDORSEMENT**

This Endorsement shall not serve to increase our limits of insurance, as described in SECTION III - LIMITS OF INSURANCE.

In consideration of the payment of premiums, it is hereby agreed that the following changes are incorporated into the policy.

A. The following shall be added to SECTION I, COVERAGE A., Par. 1. of the policy:

1. Notwithstanding the terms of SECTION I, COVERAGE A., Par. 2., Exclusion f.(1) of the policy, but subject to all other terms, conditions and exclusions of the policy, we will pay those sums the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage", caused by "asbestos", which occurs during the policy period and which is caused by an "occurrence" "arising from" your performance of "asbestos abatement", "encapsulation" or "enclosure" of "asbestos" during the policy period.

2. Notwithstanding the terms of SECTION I, COVERAGE A., Par. 2., Exclusion m.(1) of the policy, but subject to all other terms, conditions and exclusions in the policy, this insurance shall apply to "property damage" to "impaired property" caused by the release, dispersal, discharge or escape of "asbestos" resulting from your performance of "asbestos abatement" during the policy period.

B. The following exclusion shall be added to SECTION I, COVERAGE A. and COVERAGE B., Par. 2. of the policy.

This insurance does not apply to:

"Claims" or "suits" "arising from" the manufacture, distribution, sale, installation or utilization of any product containing or consisting of "asbestos" in whatever form.

C. For the purposes of the coverage provided under this Endorsement, the following definitions are added to SECTION V of the policy:

1. "Asbestos abatement" means all procedures and operations to prevent fiber release from "asbestos" containing or "asbestos" contaminated materials, and excludes "encapsulation" and "enclosure".

2. "Encapsulant" means a substance applied directly to the surface of a material or substance to prevent the discharge, dispersal, release or escape of any part of that material or substance, either by creating a membrane over the surface or by penetrating the material or substance and binding its components together.

3. "Encapsulation" means the coating of the surface of a material or substance with an "encapsulant" (excluding lockdown as defined in the "Company Guidelines"), to prevent the discharge, dispersal, release or escape of any part of that material or substance.

4. "Enclosure" means those procedures and operations (excluding "encapsulation") required to construct an airtight, impermeable wall, ceiling or other permanent barrier around the surface of a material or substance to prevent the discharge, dispersal, release or escape of any part of that material or substance.

D. Solely with respect to the coverage afforded under this Endorsement, the definition of "bodily injury" as described in SECTION V of the policy shall be amended to include the ingestion or inhalation of "asbestos".

All other terms, conditions and exclusions under the policy are applicable to this Endorsement and remain unchanged.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

ASRRG 88 16 07 97

## CONTRACTOR'S TRANSPORTATION COVERAGE ENDORSEMENT -- ASBESTOS

This Endorsement shall not serve to increase our limits of insurance, as described in SECTION III – LIMITS OF INSURANCE.

In consideration of the payment of premiums, notwithstanding the terms of SECTION I, COVERAGE A., Par. 2., Exclusions f.(1) and g. of the policy, but subject to all other terms, conditions and exclusions of the policy, we will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" resulting solely from the discharge, dispersal, release or escape of "asbestos" which has been removed by you during the policy period, where such discharge, dispersal, release or escape of "asbestos" occurs either while being loaded or unloaded solely by you onto or from, or while being transported by you in, an "auto" owned by you and operated and driven by your employee to a "disposal site" which has been approved as such by appropriate federal and/or state authorities.

It is understood and agreed that the limits of insurance for this coverage shall be limited to $1 million per occurrence and $1 million in the aggregate under the policy and shall be subject to a self-insured retention amount of $25,000 per occurrence or the amount displayed in the endorsement attached to the policy entitled "SELF-INSURED RETENTION", whichever is greater.

"Claims" and "claim related costs" paid by us pursuant to this Endorsement shall reduce the General Aggregate Limit specified in the Declarations of the policy.

As a condition precedent to coverage hereunder, the insured shall comply with all laws and regulations applicable to the transportation of "asbestos", including but not limited to those issued by the Federal Department of Transportation, the Environmental Protection Agency, or any State Department of Transportation or governmental authority having jurisdiction over such activity.

Nothing contained in this Endorsement shall be construed to provide coverage for the "disposal" of "asbestos" (or other "pollutants") or for any liability, "claims", "suits" or damages incurred or suffered by the insured "arising from" the "disposal" of "asbestos" or other "pollutants", including, but not limited to liability under or "arising from" the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 or any other similar state or federal Superfund law or regulation.

All other terms, conditions and exclusions under the policy are applicable to this Endorsement and remain unchanged.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**ASRRG 88 18 04 98**

## LEAD ABATEMENT LIABILITY COVERAGE ENDORSEMENT

This Endorsement shall not serve to increase our limits of insurance, as described in SECTION III - LIMITS OF INSURANCE.

In consideration of the payment of premiums, it is hereby agreed that the following changes are incorporated into the policy.

A. The following shall be added to SECTION I, COVERAGE A., Par. 1. of the policy:

Notwithstanding the terms of SECTION I, COVERAGE A., Par. 2., Exclusion f.(1) of the policy, but subject to all other terms, conditions and exclusions of the policy, we will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" caused by "lead", which occurs during the policy period and which is caused by an "occurrence" resulting from your "lead abatement" activities performed during the policy period.

B. The following exclusions shall be added to SECTION I, COVERAGE A. and COVERAGE B., Par. 2. of the policy.

This insurance does not apply to:

1. "Claims" or "suits" "arising from" the "encapsulation" or "enclosure" of "lead".
2. "Claims" or "suits" "arising from" the removal or treatment of "lead" contained in any petroleum-based product, including, but not limited to gasoline.
3. "Claims" or "suits" "arising from" dry scraping, sanding, sandblasting or open flame burning of "lead" or "lead" containing material, or the use of methylene chloride or methylene chloride based products.
4. "Claims" or "suits" "arising from" the manufacture, distribution, sale, installation or utilization of any product containing or consisting of "lead" in whatever form.

C. For the purposes of the coverage provided under this Endorsement, the following definitions are added to SECTION V of the policy:

1. "Encapsulant" means a substance applied directly to the surface of a material or substance to prevent the discharge, dispersal, release or escape of any part of that material or substance, either by creating a membrane over the surface or by penetrating the material or substance and binding its components together.
2. "Encapsulation" means the coating of the surface of a material or substance with an "encapsulant" (excluding lockdown as defined in the "Company Guidelines"), to prevent the discharge, dispersal, release or escape of any part of that material or substance.
3. "Enclosure" means those procedures and operations (excluding "encapsulation") required to construct an airtight, impermeable wall, ceiling or other permanent barrier around the surface of a material or substance to prevent the discharge, dispersal, release or escape of any part of that material or substance.
4. "Lead abatement" means all procedures and operations required to clean up, detoxify, dilute, remove or abate "lead" or "lead" containing materials.

All other terms, conditions and exclusions under the policy are applicable to this Endorsement and remain unchanged.