# SMITH & DUGGAN LLP
ATTORNEYS AT LAW

TWO CENTER PLAZA
BOSTON, MA 02108-1906
TELEPHONE: (617) 248-1900
FACSIMILE: (617) 248-9320

Scott A. Smith                                                                       SASmith@SmithDuggan.com

September 25, 2003

Carol A. C'Miel, Esq.
Morrison, Mahoney & Miller LLP
1500 Main Street, Suite 2400
PO Box 15387
Springfield, MA 01115-5387

Re: *Kerri A. Ellis, Administratrix of the Estate of Susan Castell v. 344 Providence Road Realty Trust et al.*
Worcester Division of the Superior Court Department
Civil Action No. 00-2384

Dear Attorney C'Miel:

As you know, I represent the defendants 344 Providence Road Realty Trust ("the Trust") and Richard J. Wunschel, as Trustee, through their insurer Nautilus Insurance Company ("Nautilus"), in this case. Pursuant to the express terms of the South Middlesex Opportunity Council, Inc., Gap Filler Lead Paint Abatement Program Contractor/Owner Deleading Agreement between Architectural Deleading, Inc., and Mr. Wunschel ("the Agreement"), the Trust and Mr. Wunschel demand that Architectural Deleading defend and indemnify them from all demands and claims asserted by the plaintiff.

On March 15, 2000, a fire occurred in a building then owned by the Trust located at 11-21 Sutton Street, Northbridge, Massachusetts. The plaintiff, the administratrix of the estate of the decedent Susan Castell who died in the fire, alleges that the decedent's death resulted from the negligence of the Trust, Mr. Wunschel, and Architectural Deleading (collectively, "the defendants"). More specifically, the plaintiff alleges that the defendants failed to comply with various Massachusetts State Building Code ("Code") requirements. The alleged Code violations include, according to the plaintiff, the defendants' failure to secure building permits for the work performed on the building by Architectural Deleading pursuant to the Agreement. The plaintiff argues that if the defendants has secured the necessary building permits, the proper inspectors would have been put on notice of the work being performed on the building, and would, in turn, have learned that the building did not meet the Code requirements for means of egress. The plaintiff further alleges that the defendants would then have had to meet the Code requirements for means of egress, and, in so doing, would have provided the decedent with an alternative means of exiting her apartment at the time of the fire thereby preventing her death.

Pursuant to paragraph 6 of the Agreement, Architectural Deleading

> shall defend, indemnify and hold harmless the owner from liability and claim damages because of bodily injury, death, property damage, sickness, disease, or loss and expenses arising from [Architectural Deleading's] operations under this contract.

Smith & Duggan LLP

Carol A. C'Miel, Esq.
September 25, 2003
Page 2

The Agreement also states, in paragraph 13, that "[a]ll permits and licenses necessary for the completion and execution of the work shall be secured and paid for by the contractor" and, further, that "[a]ll work shall be performed in conformance with applicable local codes and requirements whether or not covered by Specifications and Drawings from the work."

If any building permits were, in fact, required, securing those permits was the responsibility of Architectural Deleading, not the Trust and Mr. Wunschel. Additionally, to the extent that Architectural Deleading's work was not performed in conformance with the applicable provisions of the Code, that too is Architectural Deleading's responsibility. The plaintiff claims that the failure to secure building permits and otherwise comply with the Code caused the decedent's death. Because Architectural Deleading had responsibility for securing any necessary building permits and was responsible for performing its work in conformance with the Code, any liability for a death that resulted from Architectural Deleading's failure to comply with either provision rests with Architectural Deleading. Architectural Deleading's failure to comply with the Agreement also triggers Architectural Deleading's obligation to defend and indemnify the Trust and Mr. Wunschel, pursuant to paragraph 6 of the Agreement, where the decedent's death arose from Architectural Deleading's "operations under this contract."

Furthermore, Paragraph 13 of the Agreement also states that

> [I]f [Architectural Deleading] observes that the proposed construction is at variance with applicable laws, rules, ordinances, and/or regulations bearing on the conduct of the work, [it] shall promptly notify the owner in writing. Any necessary change shall be adjusted as provided for in the contract changes in the work. If the contractor knowingly performs work contrary to such laws, ordinances, etc., and without notice to the owner, [it] shall bear all costs arising therefrom.

At no time did Architectural Deleading provide the Trust and Mr. Wunschel with any notice that the work to be performed under the Agreement was at variance with the Code. Architectural Deleading knew or should have known of the existence of any Code violations involved in the work to be done in accordance with the Agreement. To the extent that any such Code violations caused the decedent's death, Architectural Deleading is responsible.

For the reasons set forth above, Architectural Deleading, through it insurer, is obligated to defend and indemnify the Trust and Mr. Wunschel against all the claims contained in the plaintiff's complaint.

I look forward to hearing from you.

Very truly yours,

Scott A. Smith

cc: Richard Wunschel