# EXHIBIT

# 1

# THE LAW OF TORTS

By

**Dan B. Dobbs**
*Professor of Law*
*The University of Arizona*
*James E. Rogers College of Law*



SOCIAL LAW LIBRARY 1804 BOSTON

**HORNBOOK SERIES®**



WEST
GROUP

ST. PAUL, MINN., 2000

*(4) Contribution.* Apportionment is completed under the rule that when one tortfeasor paid more than his appropriate share of liability, he could ordinarily obtain contribution from the other tortfeasors, a rule generally followed in the latter part of the 20th century.[6]

*The meaning of joint and several liability.* Joint and several liability has been recognized since the 1700s.[7] When two or more tortfeasors are jointly and severally liable, each defendant is subject to liability for all of the plaintiff's damages. The plaintiff can obtain a judgment against all defendants and then enforce it against any one of them, or partly against one and partly against another.[8] The effect is to provide the plaintiff with more than one source of funds but not more than one complete satisfaction. If tortfeasor A has few assets and is underinsured, or A enjoys an immunity or partial immunity, the plaintiff may be able to enforce the judgment against tortfeasor B. If the plaintiff enforces a judgment against one tortfeasor for more than his fair share of the liability, today's law usually permits that tortfeasor contribution or other adjustments from the non-paying tortfeasor.

## § 386. Contribution and Indemnity in a Joint and Several Liability System

**Contribution and Indemnity**

*History.* Under the rule originally adopted by the courts, when the plaintiff enforced a joint and several judgment entirely against A, A was not allowed to recover contribution from B for any part of what he had paid.[1] The result was that although both A and B were at fault, A paid all the damages and B paid none. The rule grew up in the day when joint and several liability applied only to tortfeasors who acted in concert to carry out intentional torts. In that setting, denial of contribution was equivalent to saying that an intentional tortfeasor cannot use the courts to enforce an equitable loss sharing.

*General recognition of contribution rights.* However, either by statute or judicial decision, a right of contribution is now a generally accepted part of the joint and several liability system[2] except that contribution is still denied to intentional tortfeasors.[3] Early statutes authorized contribution only when one tortfeasor satisfied a judgment

---

6. See §§ 386 & 387.

7. See Merryweather v. Nixan, 101 Eng. Rep. 1337 (1799) (reflecting one tortfeasor's payment of the entire liability).

8. Restatement of Apportionment § 27A; John W. Wade, Should Joint and Several Liability of Multiple Tortfeasors Be Abolished?, 10 Am. J. Trial Advoc. 193 (1986).

§ 386

1. See Robert A. Leflar, Contribution and Indemnity Between Tortfeasors, 81 U.Pa. L. Rev. 130 (1932).

2. E.g., Cal. Civ. Proc. Code § 875; 740 ILCS § 100/3; Iowa Code Ann. § 668.5; Mich. Stats. § 600.2925a; Uniform Contribution Among Tortfeasors Act § 1.

3. The Uniform Contribution Among Tortfeasors Act § 1 reflects the current view in permitting contribution in favor of one who has paid more than his "pro rata share."

for the plaintiff; the same tortfeasor's settlement with the plaintiff would not support a contribution claim against the other tortfeasors. These statutes have in effect been broadened by judicial decisions creating a contribution right even in cases of settlement, somewhat misleadingly called "equitable indemnity."[4] Other statutes specifically authorize contribution in favor of a tortfeasor who satisfies the plaintiff's claim, whether by paying a judgment or effecting a settlement that releases the other tortfeasors.[5]

*Traditional indemnity.* Indemnity differs from contribution. While contribution contemplates that two defendants will share in the ultimate liability, indemnity contemplates that one will fully repay the other. Indemnity was and is permitted in only a few situations. If A is liable only vicariously and not because he participated in or ratified B's tort, A can obtain indemnity from B, even if contribution is not permitted. Employers are thus theoretically entitled to indemnity from employees when the employer satisfies a judgment for the employee's tort, although this is a right seldom asserted.[6] Retailers who are held liable without fault for products defective when they left a manufacturer's hands are also entitled to indemnity against the manufacturer.[7] Somewhat similarly, if A acted on directions of B, or on B's misrepresentation, and believed he was acting properly, B is required to indemnify A.[8] Business enterprises dealing with each other often provide that one will indemnify the other for any liability arising out of particular operations.[9]

*Active-passive indemnity.* Before the days of comparative fault and generally available contribution, courts sometimes awarded indemnity to a tortfeasor who was thought to be significantly less responsible because he was in some sense "passive." That was an all or nothing solution, not a share of responsibility in proportion to fault. That active-passive kind of indemnity is now in disrepute and probably has little or no future in apportioning responsibility among tortfeasors.[10]

*Requirements for contribution.* Under the liberal modern system, the tortfeasor who pays more than his appropriate share is entitled to recover contribution from other tortfeasors, by separate suit or by asserting third party claims against them in the plaintiff's suit. The tortfeasor claiming contribution must ordinarily prove that he and the other tortfeasors shared a common liability to the plaintiff. This means that if A and B negligently cause the plaintiff's harm, but B is not liable to the plaintiff because he is immune, A is not entitled to contribution

4. See, e.g., See American Motorcycle Ass'n v. Superior Court, 20 Cal.3d 578, 146 Cal.Rptr. 182, 578 P.2d 899 (1978). Traditional indemnity in contrast is not a system for dividing responsibility but for shifting it entirely to one of the tortfeasors.

5. E.g., MASS. GEN. L. ANN. ch. 231B § 1 (a).

6. § 333.

7. § 375.

8. Restatement § 886B (2).

9. E.g., Potlatch Corp. v. Missouri Pac. R.R., 321 Ark. 314, 902 S.W.2d 217 (1995).

10. Miller v. American President Lines, Ltd., 989 F.2d 1450 (6th Cir.1993); VICTOR SCHWARTZ, COMPARATIVE NEGLIGENCE § 16.9 (3d ed. 1994 & Supp.).