UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| 344 PROVIDENCE ROAD REALTY TRUST, | : | |
| RICHARD J. WUNSCHEL, and | : | |
| NAUTILUS INSURANCE COMPANY, | : | |
|    Plaintiffs | : | |
| | : | |
|    v. | : | Civil Action No. 04-40197-FDS |
| | : | |
| AMERICAN SAFETY RISK RETENTION | : | |
| GROUP, INC. and ARCHITECTURAL | : | **Oral Argument Requested** |
| DELEADING, INC. | : | |
|    Defendants | : | |
| _____ | : | |

**Memorandum of 344 Providence Road Realty Trust, Richard J. Wunschel and
Nautilus Insurance Company in Opposition to Motion of American Safety
Risk Retention Group, Inc. for Judgment on the Pleadings**

**<u>Introduction</u>**

Plaintiffs Richard J. Wunschel ("Wunschel"), 344 Providence Road Realty Trust ("Realty

Trust") and Nautilus Insurance Company ("Nautilus") submit this memorandum in opposition to

the Motion of Defendant American Safety Risk Retention Group, Inc ("Risk Retention") for

Judgment on the Pleadings.  Risk Retention's unfair and deceptive trade practices in the conduct

of its insurance business have damaged Wunschel, the Realty Trust and Nautilus through the loss

of money by actions primarily and substantially within the Commonwealth of Massachusetts.

Amended Complaint ¶¶ 50 - 52.  Massachusetts law provides the plaintiffs with standing to

pursue a cause of action for damages or injunctive relief.  <u>See</u> Mass. Gen. Laws ch. 93A, § 2, §

11.  Federal law, by virtue of 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57, provides

standing to seek a declaration of the plaintiffs' chapter 93A rights against Risk Retention.  Risk

Retention's motion does not discuss these allegations, but focuses on those brought against

Architectural Deleading, Inc. ("ADI"),[1] a party whose interest is adverse to it and a party that its counsel does not represent.  As to the single count against it, Risk Retention's motion fails to hurdle the notice pleading standards that govern Rule 12(c) motions raised in the fashion presented here and fails to recognize that it admitted in its answer the "common, undivided and joint interest" of the plaintiffs to assert their claims.  Accepted principles of contractual and equitable subrogation allow Nautilus to seek a judgment in its favor as well, based on the rights of either or both of its two named insureds, Wunschel and the Realty Trust.   Risk Retention's motion not only mischaracterizes the claims the plaintiffs seek to enforce, but misapprehends the law that affords them standing to be heard in this tribunal.  For these reasons and those more fully set forth in this memorandum, Risk Retention's motion for judgment on the pleadings should be denied.

## I.    Courts Deny Rule 12(c) Relief Unless, Accepting The Complaint As True And Drawing Inferences In Favor Of Plaintiffs, It Appears Without Doubt That Plaintiffs Can Recover Under No Set Of Facts

The standard for judging a motion on the pleadings under Federal Rule of Civil Procedure 12(c) is the same as that for a motion to dismiss under Rule 12(b)(6).  Collier v. City of Chicopee, 158 F.3d 601, 602 (1st Cir. 1998).  In reviewing a motion for judgment on the pleadings under Rule 12(c), a court must accept as true all factual averments in the complaint and draw all reasonable inferences in the plaintiffs' favor.  See Santiago de Castro v. Morales Medina, 943 F.2d 129, 130 (1st Cir. 1991).   See also Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002) (reaffirming Scheurer v. Rhodes, 416 U.S. 232, 236 (1974) and Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164 (1993)).  The complaint should not be dismissed unless it appears without doubt that the plaintiff can prove no

---

[1] See Brief In Support Of Defendant American Safety Risk Retention Group, Inc., Motion For Judgment On The Pleadings ("Risk 12(c) Brief") at 6-8 (discussing the ADI contract).

set of facts in support of its claim that would entitle it to relief.  See Santiago de Castro, 943 F.2d at 130.  The defendants can succeed on their motion only if it clearly appears that plaintiffs cannot recover on any viable theory.  Canty v. Old Rochester Regional Sch. Dist., 54 F. Supp. 2d 66, 68 (D. Mass. 1999) (focus should not be on ultimate merits but on whether plaintiff should be entitled to offer evidence to support claim).  Because a Rule 12(c) motion seeks a judgment, the important policy of ensuring litigants a full and fair hearing on the merits weighs against granting a Rule 12(c) motion in all but the clearest circumstances.  See Springfield Library & Museum Ass'n v. Knoedler Archivum, Inc., 341 F. Supp. 2d 32, 36 (D. Mass. 2004).

## II.     Risk Retention May Not Challenge Claims Asserted Against ADI And Has Not Challenged Claims Advanced By Wunschel

As an initial matter, to the extent that Risk Retention seeks Rule 12(c) relief as to allegations not asserted against it, but against ADI, it may not do so in its motion as it has not entered an appearance on ADI's behalf and has asserted a cross-claim making clear that its interest is adverse to ADI's.  Risk Retention's motion can speak only to the claims filed against it in Count III of the Amended Complaint for unfair and deceptive business practices prohibited by Massachusetts General Laws chapter 93A.  Its challenge to the propriety of having this court adjudicate the rights of Nautilus and the Realty Trust with respect to its chapter 93A violations must be evaluated with that in mind.  It may not through this motion advocate for relief for an adverse party its counsel does not represent.  See Local Rule 83.5.2.

Moreover, Risk Retention's motion makes no challenge to the standing of Wunschel to seek relief against it.  Although Risk Retention's memorandum at places refers to a dismissal of the entire action while omitting the distinction plainly articulated in its motion with respect to the continued viability of Wunschel's claims, compare Risk 12(c) Brief at 4 ("only proper party in this declaratory action is Wunschel") with id. at 9 (requesting the Court to "dismiss this

3

declaratory judgment action"), no such complete relief is permitted because Wunschel's standing

remains unchallenged in Risk Retention's motion papers.  Risk Retention has not challenged the

claims of Wunschel and may not challenge the claims asserted by the plaintiffs against ADI.

**III.    Risk Retention Has Admitted The Common, Undivided And Joint Interest Of Plaintiffs To Assert Their Claims And Has Waived An Ability To Contest That Admission Under Fed. R. Civ. P. 9(a)**

Federal Rule of Civil Procedure 9(a) does not require the plaintiffs to aver the capacity in

which they sue or even that they sue in a representative capacity, except to the extent required to

show the jurisdiction of the court (in this case diversity of citizenship jurisdiction, which was

done).  The Civil Rules thus anticipate that pleading niceties will not delay the progress of

litigation towards the merits of a dispute.  Rule 9(a) further provides that

> [w]hen a party desires to raise an issue as to the legal existence of any party or the capacity of any party to sue or be sued or the authority of a party to sue or be sued in a representative capacity, the party desiring to raise the issue <u>shall</u> do so by specific negative averment, which shall include such supporting particulars as are peculiarly with the pleader's knowledge.

Fed. R. Civ. P. 9(a) (emphasis added).

In the Amended Answer, Crossclaim and Counterclaim of Defendant American Safety

Risk Retention Group, Inc., To Plaintiffs' Amended Complaint at paragraph 10, Risk Retention

answered "[t]he defendant admits the allegations contained in paragraph 10 of the plaintiffs'

amended complaint."  The allegation admitted reads:

> This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 2201 and 28 U.S.C. § 1332(a) because of the diversity of citizenship of the parties involving matters in controversy with respect to each plaintiff <u>and/or with respect to the common, undivided and joint interest of several of the plaintiffs</u> in excess of $75,000 exclusive of interest and costs.

Amended Complaint ¶ 10 (emphasis added).  Risk Retention waived its opportunity, and

moreover disregarded its mandatory obligation under Rule 9(a), to dispute that the interest of

Wunschel, the Realty Trust and/or Nautilus was other than a common, undivided and joint one.

Not only did Risk retention admit these allegations in its amended answer to the Amended

Complaint but it also admitted the same allegation in its original answer.  (See Answer,

Crossclaim and Counterclaim Of Defendant American Safety Risk Retention, Inc., To Plaintiffs'

Amended Complaint, ¶ 10.)  The admission of paragraph ten of the Amended Complaint dooms

the relief that it seeks by way of a Rule 12(c) motion.  The Court need not analyze the question

further.

     If the Court were to conduct additional analysis, it would recognize that Risk Retention

admitted at paragraph 16 of the Amended Complaint that a true copy of the contract was attached

to the complaint, but never by specific negative averment raised any defense that the way in

which the agreement was signed deprived either Nautilus or the Realty Trust with a capacity to

sue either in their own names or in a representative capacity.  Rule 9(a) prevents it from doing so

now.  Specifically, the First Affirmative Defense and Third Affirmative Defense which challenge

the standing of the Realty Trust and Nautilus never set forth any particulars why standing is

lacking even though Risk Retention admits the terms of the contract which are therefore

particularly within its knowledge to discuss.[2]  Fed. R. Civ. P. 9(a).

     In addition, in response to paragraph twenty-two of the Amended Complaint in which

Nautilus alleged it provided a defense to Wunschel and the Realty Trust in the Ellis Action,

incurred attorneys' fees, costs and expenses in defense of the Ellis Action, and accordingly was

---

[2] The "final" tenth affirmative defense raised by Risk Retention in its Amended Answer (but not in its original answer) is that plaintiffs could not recover "because there was no doctrine of privity of contract. [sic]"  Since privity of contract is a doctrine, stating that there was no such doctrine does not raise a legitimate defense.  To the extent that the Court were to rewrite the defense to assert that there was no privity of contract, the defense would still offend Rule 9(a) as well as Federal Rule of Civil Procedure 9(c) because privity of contract is a condition precedent to suit on a contract, the denial of the performance or occurrence of which by rule "shall be made specifically and with particularity," which was not done.

subrogated to the rights of Wunschel and the Realty Trust, Risk Retention makes no specific

negative averment but offers a denial only because it was "without knowledge as to the truth or

falsity of the allegations contained in paragraph 22 of the plaintiff's amended complaint . . . ."

This does not meet the requirement of Rule 9(a).  In its answer to paragraph 32 of the amended

complaint, Risk Retention admitted that Nautilus agreed to pay $300,000 "on behalf of

Wunschel and the Realty Trust" to secure a settlement of the claims of the plaintiff in the Ellis

Action.  It cannot negative the rights of Nautilus to sue that follow from this admission.  Having

failed to contest by specific negative averment the authority of the Realty Trust to bring its

claims and the authority of Nautilus to sue in a representative capacity in accordance with

Federal Rule of Civil Procedure 9(a), it may not do so now.

**IV.     The Controversy Over The Damages Caused To The Realty Trust And Nautilus By
          Risk Retention's Unfair Business Practices Will Be Redressed By This Action**

> **A.     Damage Caused By Risk Retention's Chapter 93A Unfair Business
>          Practices Presents An Actual Controversy**

Risk Retention claims that no actual controversy exists between it and Nautilus and the

Realty Trust because neither has standing to sue on the contract.  See Risk 12(c) Brief at 7-8.  It

presents its argument as a matter of constitutional dimension citing Supreme Court standing

precedent under Article III of the United States Constitution.  See Risk 12(c) Brief at 6.

Massachusetts law provides the Realty Trust and Nautilus with standing to pursue a cause of

action seeking damages or injunctive relief against Risk Retention for its unfair and deceptive

trade practices occurring primarily and substantially within the Commonwealth of

Massachusetts.  See Mass. Gen. Laws ch. 93A, § 2, § 11.  Article III of the Constitution and the

Declaratory Judgment Act limit the exercise of judicial power to "cases" or "controversies".

U.S. Const., Art. III; 28 U.S. C. § 2201.  See also Aetna Life Ins. Co. v. Hayworth, 300 U.S. 227,

239-40 (1937) (insurance company had standing to pursue declaratory judgment action because

dispute relating to legal rights and obligations arising from contracts of insurance presented case

of actual controversy); Fed. R. Civ. P. 57.  A "controversy" is one that is appropriate for judicial

determination admitting of specific relief through a decree of a conclusive character, as

distinguished from an opinion advising what the law would be upon a hypothetical state of facts.

Aetna Life, 300 U.S. at 240.  An action seeking money damages and declaratory relief for unfair

business practices violating chapter 93A is a controversy appropriate for judicial resolution.

Here no facts need be hypothesized, but only proven to secure relief.  The declaratory and direct

relief sought by the plaintiffs with respect to money damages and the plaintiffs' financial interest

in contractual benefits ensure the concrete adverseness that Article III demands.

Risk Retention's unfair or deceptive claims handling practices have damaged the

plaintiffs by knowingly or intentionally engaging in unfair or deceptive acts or practices in trade

or business including unfair claim settlement practices in the business of insurance.  These unfair

or deceptive acts or practices include but are not limited to Risk Retention's failure to effectuate

a prompt, fair and equitable settlement of Wunschel's and the Realty Trust's claim where

liability on their claim under the CGL Policy had become reasonably clear; failing to

acknowledge and act reasonably promptly upon communications with respect to their claim that

arises under the CGL Policy; refusing to pay their claim without conducting a reasonable

investigation based upon all available information; failing to affirm or deny coverage within a

reasonable time; failing to settle their claim promptly, where liability has become reasonably

clear, under one portion of the CGL Policy coverage in order to influence settlement under other

portions of the CGL Policy coverage; failing to provide promptly a reasonable explanation of the

basis in the CGL Policy in relation to the facts or applicable law for denial of their claim; and/or

forcing them to litigate this matter.  Amended Compl. ¶ 40.  See Columbia Chiropractic Group, Inc. v. Trust Ins. Co., 430 Mass. 60, 63-64 (1999) (unfair insurance claim practice by business that causes another business to incur litigation expenses actionable under chapter 93A); R.W. Granger & Sons, Inc. v. J&S Insulation, Inc., 435 Mass. 66, 78 (2001) (court may rely on violations of Mass. Gen. Laws ch. 176D, § 3(9) as "persuasive evidence" of unfair business practice proscribed by chapter 93A) (citing with approval Kiewit Const. Co. v. Westchester Fire Ins. Co., 878 F. Supp. 298, 301-02 (D. Mass. 1995) (Keeton, J. adopting report and rec. of Karol, M.J.) (although not every violation of Mass. Gen. Laws ch. 176D is a per se violation of chapter 93A that may be sued upon by a commercial plaintiff, unfair and deceptive insurance practices, even those that violate chapter 176D, are not immune from attack by commercial plaintiffs)); M. DeMatteo Constr. Co. v. Century Indem. Co., 182 F. Supp. 2d 146, 160-63 (D. Mass. 2001) (Young, C.J.) (commercial plaintiff can state a claim under chapter 93A by alluding to conduct that is impermissible under chapter 176D, including failure of insurer to effectuate prompt, fair, and equitable settlement of claims in which liability has become reasonably clear).

Moreover, in Massachusetts as elsewhere it is axiomatic that an insurer's duty to defend is broader than its duty to indemnify.  E.g., Ruggerio Ambulance Serv. v. Nat'l Grange Ins. Co., 430 Mass. 794, 796 (2000).  Each must be analyzed on its own terms.  If liability is reasonably clear as to either duty, chapter 93A prohibits an insurer in the conduct of its business from acting unfairly or deceptively and provides a remedy to those harmed including up to three times actual damages and attorneys fees if it does.  See Hopkins v. Liberty Mut. Ins. Co., 434 Mass. 556, 562-65 (2001).  Even if liability as to either duty is not reasonably clear, chapter 93A still prohibits an insurer from engaging in unfair or deceptive claims handling practices such as causing another business to incur litigation expenses to have coverage addressed with a reasonable explanation as

Risk Retention has done in this case. See Columbia Chiropractic Group, Inc. v. Trust Ins. Co., 430 Mass. at 63-64.

The plaintiffs allege real "pocketbook" injuries of a type that have always satisfied the Constitution's case and controversy requirement. See, e.g., Barrows v. Jackson, 346 U.S. 249, 256 (1953). Businesses including insurers can seek redress of their pocketbook injuries even when subrogation is involved. See, e.g., Lexington Ins. Co. v. All Regions Chem. Labs, 419 Mass. 712, 713 (1995) (upon payment of a loss the insurer is entitled to be subrogated to pursue contract action of insured as well as any right of action against a third person whose negligence or wrong caused the loss); New England Gas & Elec. Ass'n v. Ocean Acc. & Guar. Corp., 330 Mass. 640, 659 (1953) (insurer of electric company, which was required to pay for direct and consequential damage caused by turbine spindle failure, was entitled to be subrogated to insured's contract rights against turbine manufacturer). The dispute between the parties here is not academic or moot, Aetna Life, 300 U.S. at 240, but involves actual events that have transpired and damages well in excess of $300,000.

### B.    Facts Can Be Proven To Show That The Realty Trust Was A Party To The Contract Or A Party Intended To Receive The Benefits Of The Contract

#### 1.    ADI's Knowledge Of The Realty Trust's Ownership Interest and/or Wunschel's Trustee Status May Be Proven By Parole Evidence.

Risk Retention seeks Rule 12(c) relief on the ground that "it is undisputed that the Trust was not a party to the Deleading Contract." Risk 12(c) Brief at 7. There is, however, a dispute on that point. A motion for judgment on the pleadings cannot ignore the pleadings. Under the standard of review of a Rule 12(c) motion, the Court must accept as true paragraph ten of the amended complaint, which Risk Retention has admitted, that the Realty Trust and Nautilus have

a common, undivided and joint interest that provides them a basis to sue here.  If the Court for some reason were to disregard that allegation and admission, it still must accept that the plaintiffs allege Wunschel signed the contract in his capacity as trustee of the Realty Trust.  (See Amended Complaint, ¶ 15.)  Risk Retention counters in its Brief (but not in its Amended Answer) that Wunschel signed the contract "as a private individual", "in his private capacity," see Risk Rule 12(c) Brief at 2, 6, 7, 9; yet, the contract itself does not exhibit this restrictive language that Risk Retention hypothecates.  The contract is between a party named the "Contractor" and another named an "Owner."  Amended Complaint Ex. 2.  Discovery in this action has yet to explore what ADI knew about the Realty Trust as owner of the Sutton Street property and Wunschel's role as its trustee, whether as a matter of knowledge gained in communications with Wunschel directly or with the Southern Middlesex Opportunity Council (SMOC) or otherwise.

For example, the Notification of Deleading Work signed by ADI before the contract was executed (which was produced in discovery in the Ellis Action, in which action this issue was not raised) already shows that Risk Retention knew that Wunschel was the trustee of the Realty Trust, and that the Realty Trust was the owner of the property that was the subject of the Contract.  (See Notification of Deleading Work signed by ADI attached as Exhibit 1.)[3]  Risk Retention asserts that only Wunschel's personal home address appears on the contract, Risk Rule

---

[3] The plaintiffs do not offer extra pleading evidence in a sense that would permit a court to treat a Rule 12(c) motion as one for summary judgment, see Rubert-Torres v. Hospital San Pablo, Inc., 205 F.3d 472, 475-76 (1st Cir. 2000) (discovery conversion), but only to illustrate that they have a real potential of proving a set of facts in support of their claim that would entitle them to relief. If the Court were to provide notice, however, of its intent to convert Risk Retention's motion to one for summary judgment, Collier v. City of Chicopee, 158 F. 3d 601, 603 (1st Cir. 1998), the undersigned declares under the penalties of perjury that initial disclosures have just taken place under the Court's Scheduling Order, and no party has yet had a fair opportunity to conduct discovery with respect to ADI's knowledge of the role of the Realty Trust with respect to the contract or Wunschel's trustee status because those issues were not raised in the Ellis Action. Fed. R. Civ. P. 56(f).

12(c) Brief at 7, but that same address is listed for the Realty Trust on the Notification of Deleading Work that ADI signed.  Risk Retention leaps to an unwarranted legal conclusion that because language in the contract did not mention whether Wunschel signed as the trustee of the Realty Trust, ADI was in fact ignorant and/or could not be held to have known that circumstance.

Significantly, the contract has no explicit complete integration clause that would bar parole evidence, only a clause with respect to written modifications.  Parole evidence as to the parties' understanding of the Realty Trust's ownership interest, Wunschel's role as its trustee, and the intended beneficiaries of the contract (discussed below) may be proven.  Robert Indus., Inc. v. Spence, 362 Mass. 751, 754 (1973) (parole evidence generally permissible to show circumstances of parties, not for purpose of contradicting or changing contract's terms, but for elucidating them).  This evidence will show that ADI had actual knowledge Wunschel was signing as trustee of the trust that owned the property and/or the Realty Trust was a party to the contract.  These facts as can be proven prohibit dismissal under the standard of review governing a motion for judgment on the pleadings.

> 2.    Risk Retention Makes No Argument That Apart From Article III Standing Jurisprudence, Massachusetts Contract Law Bars The Claims Of The Realty Trust Or Nautilus.

Risk Retention's resort to constitutional jurisprudence to advance its standing argument is misplaced, but it has not proffered as an alternative any analysis of Massachusetts contract law to examine whether the Realty Trust or Nautilus is a proper plaintiff.  Since Risk Retention has made no argument with respect to any such precedent, the Court should not act as its counsel tipping the scales to make legal arguments not pressed in its brief.  To the extent that some other doctrine might better support its misguided plea, pertinent legal argument has not been fairly

presented in accordance with the requirements of Local Rule 7.1 and any such other potential

doctrines should not in all fairness to the non-moving party be considered at all.  Cf. North Am.

Specialty Ins. Co. v. Lapalme, 258 F.3d 35, 45 (2001) ("There are few principles more securely

settled in this court than the principle which holds that, absent exceptional circumstances, an

appellant cannot raise an argument for the first time in a reply brief.")

> 3.     Facts Can Be Proven To Show The Realty Trust and/or
> Nautilus Were Intended Third Party Beneficiaries Of ADI's
> Indemnity Promise and The Realty Trust Has Rights Under
> Established Undisclosed Principal Agency Law.

A claim that a party cannot sue on a contract because it is a non-signatory is not one of

Constitutional dimension, but typically analyzed in terms of third-party beneficiary contract law.

See also Fed. R. Civ. P. 17(a) (discussing third–party beneficiary plaintiffs).  In Massachusetts,

when one person for a valuable consideration engages with another by simple contract to do

some act for the benefit of a third, the latter, who would enjoy the benefit of the act, may

maintain an action for the breach of such engagement.  Rae v. Air-Speed, Inc., 386 Mass. 187,

195 (1982).  Mere incidental beneficiaries may not recover on the contract, but intended

beneficiaries as that status is interpreted under Massachusetts law may.  See Flattery v. Gregory,

397 Mass. 143, 148-49 (1986).  For example, the Supreme Judicial Court has held that a non-

party to a contract could sue to enforce a promise to pay legal fees of another, see Choate, Hall &

Stewart v. SCA Servs., Inc., 378 Mass. 535, 544-45 (1979) (discussing third-party beneficiary

rights of non-signatory law firm); Margolies v. Hopkins, 401 Mass. 88, 90 (1987) (attorney could

sue to recover fees from husband who had agreed with wife to pay the fees she had incurred) —

a situation conceptually indistinguishable from the case at bar.  Here the indemnity and hold

harmless agreement is one promising to pay the defense costs of another.  Those who incur those

defense costs are intended beneficiaries of the promise.  One whose protection must have been

within the contemplation of the parties at the time of the execution of the contract will be entitled to relief as a third-party beneficiary.  See Wincek v. Town of West Springfield, 399 Mass. 700, 703 (1987).  Such is the case here.

Although some contracts include a clause stating that there may be no third party beneficiaries, see Scott J. Burnham, The Contract Drafting Guidebook 300-301 (The Michie Co., 2d ed., 1992), the contract at issue here contains no such restrictive language.  Recall that both the Realty Trust and Wunschel were named as defendants in the state court action.  The Ellis Action Second Amended Complaint treated both the same, with Count I negligence, Count II conscious pain and suffering, Count III wrongful death, and Count IV gross negligence all framed against "Wunschel and 344 Providence Road Realty Trust" as "Defendants" without distinction.  See Amended Complaint Ex. 3.  Both Wunschel and the Realty Trust were named insureds on the Nautilus Policy.  The defense provided for Wunschel was the same as that provided for the Realty Trust so the expenses incurred in defense of the claim including the $300,000 settlement paid are inextricably intertwined and recoverable, regardless of whether Wunschel or the Realty Trust signed the Contract.  On the motion to dismiss standard on which Risk Retention's Rule 12(c) motion is evaluated, the intended/incidental beneficiary issue cannot be determined as a matter of law.

Likewise, accepted agency principles with respect to the rights of an undisclosed principal likewise reinforce the rights of the Realty Trust to seek relief in this Court.  An undisclosed principal whose existence is not fraudulently concealed and who is not excluded by the terms of the contract has all the rights against the other party to the contract as if the principal itself had made the contract.  Restatement (Second) Agency, § 302 (1943); Howell v. First of Boston Int'l Corp., 309 Mass. 194, 196 (1941) (citing § 302 as one of the "familiar rules of law

13

as to undisclosed principals"). The principal, in this case the Realty Trust, has all the remedies

that would be open to a disclosed party, Wunschel. Risk Retention admits that Wunschel has the

right to sue under the contract, and the Realty Trust has those same rights as principal.

    4.    The Contract Does Not Prohibit Assignment Of Rights To
Receive Indemnity From ADI Under Facts That Can Be
Proven Here.

Under contract law rights are "assigned" and duties "delegated." Chatham

Pharmaceuticals, Inc. v. Angier Chemical Co., Inc., 347 Mass. 208, 209-210 (1964). In

Massachusetts, it "is axiomatic that a contractual right can be assigned unless assignment is

expressly forbidden by the terms of the contract. . . ." American Employers' Ins. Co. v. City of

Medford, 38 Mass. App. Ct. 18, 22 (1995). No such prohibition on assignment appears in the

ADI contract. Nothing in the indemnity agreement prohibits an assignment of some or all of the

benefits of that indemnity contract. An assignee, just as much as a party who signs the contract,

has a right to sue to recover benefits permissibly assigned to it. Therefore, Risk Retention's

claim that no set of facts could be proven on which relief could be granted fails under the

motion-to-dismiss standard of review under which its motion is filed. A mere assignment from

Wunschel (whose claims and standing has not been challenged) would provide the Realty Trust

and/or Nautilus with the pocketbook injury that Risk Retention claims that they lack and allow

relief to be granted.

Certainly, under some circumstances a contract right may not be assigned if it would

(a) materially change an obligor's duty, or (b) materially increase the risk or burden placed upon

the obligor. American Employers' Ins., 38 Mass. App. Ct. at 22; Restatement (Second) of

Contracts § 317(2)(a). Here, however, as discussed above, the extent of liability of ADI under

the indemnity promise of the contract is fixed and indivisible as between the costs of defense and

settlement of the Ellis Action against Wunschel and the Realty Trust. Whether the right to receive indemnity rests with one plaintiff and not others is of no consequence as far as ADI is concerned as it will only have to pay that sum once and its burden is exactly the same as it has been all along. It's duty as obligor is not changed materially and its risk is the same.

Attorney's fees and costs incurred in prosecuting this federal court action, which have been incurred but have not yet been fixed as they are ongoing, are recoverable from Risk Retention under Mass. Gen. Laws ch. 93A, § 9(3) and (4), and/or from ADI as consequential damages for ADI's breach of its indemnity promise. See Redgrave v. Boston Symphony Orchestra, 855 F.2d 888, 894 (1st Cir. 1988) (interpreting Massachusetts consequential damages law). At this stage of the proceedings where the allegations are taken to be true, the independent statutory basis for allowance of attorney fees in this action under chapter 93A renders a dismissal sanction improper. Should the Court for some reason at some later point determine on the merits that the attorney fees incurred for this action are not recoverable under chapter 93A, it would have to examine whether they would be recoverable under the consequential damages rule. Presently, these fees are being paid by Nautilus as subrogee of Wunschel and the Realty Trust as well as on Nautilus's own behalf. Even if Nautilus's subrogation right and its direct right to recover these fees on a consequential damages theory prohibited Wunschel or the Realty Trust from seeking them as named plaintiffs (as Risk Retention intimates in its alternative argument) dismissal is still improper as fees may be incurred by Wunschel and the Realty Trust in this action at some future date. A determination as to dismissal as to this aspect of the relief sought is thus premature in this respect as well.

**C.     Nautilus Draws Its Subrogation Rights Through Wunschel, the
        Realty Trust Or Both Under Accepted Principles Of Contractual Or
        Equitable Subrogation**

Risk Retention misapprehends the allegations of the Complaint when it asserts, "Nautilus

is the insurance carrier of the 344 Realty Trust" (Risk Rule 12(c) Brief at 3) and mistakenly

assumes by extension that Wunschel was not likewise insured.  The opposite is true (and must be

considered as such) as is clear from the Amended Complaint.  See Amended Complaint, ¶ 22

(Nautilus provided defense to Wunschel and the Realty Trust and is subrogated to the rights of

Wunschel and the Realty Trust); ¶ 23 (Nautilus incurred attorneys' fees to defend Wunschel and

the Realty Trust); ¶ 32 (settlement of the underlying action was paid by Nautilus on behalf of

Wunschel and the Realty Trust).  Both the Realty Trust and Wunschel were named insureds on

the Nautilus policy.  The common policy renewal declarations page makes this clear.  (Attached

as Exhibit 2.)  Plus, both the Realty Trust and Wunschel were named as defendants in the state

court Ellis Action.  The Second Amended Complaint in the Ellis Action treated both the same,

with Count I negligence, Count II conscious pain and suffering, Count III wrongful death, and

Count IV gross negligence all framed against "Wunschel and 344 Providence Road Realty

Trust" as "Defendants" without distinction.  See Amended Complaint Ex. 3.  The defense

provided for Wunschel was the same as that provided for the Realty Trust so the expenses

incurred in defense of the claim including the settlement paid are inextricably intertwined and

recoverable so long as the plaintiffs are correct on the scope of the indemnity clause, regardless

of whether Wunschel or the Realty Trust or both are entitled to its benefits.  Under the terms of

the Nautilus policy, Nautilus is entitled to be subrogated to any rights of Wunschel or the Realty

Trust to recovery against others.  See Frost v. Porter Leasing Corp., 386 Mass. 425, 427 (1982)

(insurer's right of subrogation may be reserved in agreement between insurer and insured).  The

16

Nautilus policy at Section IV.8. provides: "If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. . . .  At our request, the insured will bring 'suit' or transfer those rights to us and help us enforce them."  Risk Retention admits that Nautilus agreed to pay $300,000 to secure a settlement of the claims of the plaintiff in the Ellis Action.  Amended Answer to Amended Complaint ¶ 32.  It even admits that "Nautilus' rights rise . . . as high as those of its insured."  Risk 12(c) Brief at 4.

Risk Retention has challenged Nautilus's standing to sue as a subrogee, even though (a) it does not challenge the legitimacy of Wunschel's claims, (b) the amended complaint at paragraph twenty-two plainly alleges Nautilus's entitlement to subrogation rights through Wunschel as well as the Realty Trust, and (c) Risk Retention's own answer at paragraph thirty-two admits payment of $300,000 that at minimum could be recovered by Nautilus in this action by virtue of that subrogation status.  To intimate, as Risk Retention has done in its brief at page 4, that Nautilus has no standing to pursue an action as a subrogee (at least as subrogee of Wunschel if not of the Realty Trust) but to offer not one citation to a case or even argue why current and established law on this question should be overruled is improper.  Cases are legion that allow an insurance company to sue to recover as a subrogee of its insured.  See, e.g., Lexington Ins. Co. v. All Regions Chem. Labs, 419 Mass. 712, 713 (1995) (upon payment of a loss the insurer is entitled to be subrogated to pursue contract action of insured as well as any right of action against a third person whose negligence or wrong caused the loss); New England Gas & Elec. Ass'n v. Ocean Acc. & Guar. Corp., 330 Mass. 640, 659 (1953) (insurer of electric company, which was required to pay for direct and consequential damage caused by turbine spindle failure, was entitled to be subrogated to insured's contract rights against turbine manufacturer).  The Amended Complaint fairly states what is a fact, that both Wunschel and the Realty Trust are

Nautilus's insureds. Nautilus's claims are properly brought before this Court and it has standing to have them adjudicated here.

**V.    As The Realty Trust Has Suffered Some Unique Damages, Is An Interested Party For Declaratory Judgment Purposes, And Plaintiffs Do Not Seek A Double Recovery Or Increased Discovery Opportunities, Requiring Nautilus To Be Substituted For The Realty Trust Is Not Warranted**

Risk Retention's alternative argument is that Nautilus or the Realty Trust may be allowed to pursue this action, but not both. In effect, the plea made would require Nautilus to be substituted for the Realty Trust because, as explained above, Risk Retention makes no sensible challenge to Nautilus's plaintiff status as a subrogee of Wunschel. Risk Retention's admission to paragraph ten of the Amended Complaint also precludes it from challenging the "common, undivided and joint interest" of Nautilus and the Realty Trust and insisting on substitution. Even apart from that, however, several additional considerations militate against substitution.

First, the Realty Trust has incurred its own compensable defense cost damages in the Ellis Action and may incur additional attorneys fees recoverable in this action as well. The Realty Trust incurred defense costs with respect to the Ellis Action that were not paid by Nautilus and constitute damages recoverable in the Realty Trust's own right under both chapter 93A and/or the indemnity contract. See Plaintiff's Supplemental Rule 26 (a)(1) Initial Disclosure. The allegations of the Amended Complaint under the notice pleading standard of Federal Rule of Civil Procedure 8 do not require greater specification of this damage than what has been pleaded. There is nothing in the Amended Complaint challenged that precludes recovery of those damages in the name of the real party in interest, be it the Realty Trust or its trustee Wunschel.

Second, declaratory judgment precedent generally requires that all interested parties be named in a declaratory judgment action. See National Union Fire Ins. Co. of Pittsburgh Pa. v.

Massachusetts Mun. Wholesale Elec. Co., 117 F.R.D. 321, 322 (D. Mass. 1987); Warner v.
Frontier Ins. Co., 288 F.Supp.2d 127, 129-32 (D.N.H. 2003) (case remanded to state court
because of absence of insured in declaratory judgment action by injured person against insurer).
Regardless of one's view of the proper beneficiaries of the indemnity promise, the Realty Trust
has an interest in whether its chapter 93A allegations have merit.  The Realty Trust's status as an
interested party properly before this Court on that basis, even if no other, would suffice to deny
Risk Retention's motion.

Third, the plaintiffs do not seek double recovery, nor do they seek additional
interrogatories or discovery events merely because there are three named plaintiffs.  The either-
or proposition advanced by Risk Retention is not supported by any cited decision that actually
has awarded such relief.

Finally, as explained below, mandatory substitution at this juncture contravenes the
permissive language of Federal Rule of Evidence 17(a), which does not endorse the hard and fast
rule suggested.

**B.     Real Party In Interest Rules of Fed. R. Civ. P. 17(a) Do Not Permit
         The Dismissal Requested**

Federal Rule of Civil Procedure 17(a) provides explicit protection to litigants to ensure
that the proper parties are before the Court before a dismissal sanction can be ordered.  Rule
17(a) provides in part:

> Every action shall be prosecuted in the name of the real party in interest. A[] . . .
> trustee of an express trust, a party with whom or in whose name a contract has
> been made for the benefit of another, or a party authorized by statute may sue in
> that person's own name without joining the party for whose benefit the action is
> brought; . . .  No action shall be dismissed on the ground that it is not prosecuted
> in the name of the real party in interest until a reasonable time has been allowed
> after objection for ratification of commencement of the action by, or joinder or
> substitution of, the real party in interest; and such ratification, joinder, or

> substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

Fed. R. Civ. P. 17(a) (emphasis added). Rule 17(a) is not discussed by Risk Retention, but it should have been for the relief it seeks cannot be granted without exploring its contours. That Risk Retention makes no challenge to continuation of this action as advanced by Wunschel assumes all the more significance as a result.

For example, should the Court determine that the Realty Trust cannot maintain an action here because its trustee Wunschel, as the real party in interest of an express trust, must sue in his own name without naming the trust (even though the rule speaks in "may sue" terms), the Court must allow ratification, joinder or substitution such that no substantive prejudice can accrue against the merits of the plaintiffs' claims. Fed. R. Civ. P. 17(a) ("such ratification, joinder, or substitution shall have <u>the</u> <u>same</u> <u>effect</u> . . ." (emphasis added)). The same lack of prejudice would apply if the Court were to require Nautilus to be substituted for the Realty Trust. Risk Retention's assertion, <u>see</u> Risk Rule 12(c) Brief at 2, that it "should not be forced to defend duplicative claims from the 344 Realty Trust and Nautilus" makes no sense in light of Federal Rule of Civil Procedure 17(a) since the burden is no different whether substitution is required or not. What remains of the state court action discussed at the Scheduling Conference has been stayed in favor of awaiting a determination from this Court of the parties' rights so there can be no legitimate complaint from that quarter either. <u>See</u> <u>Kerri Ellis, Administratrix of the Estate of</u> <u>Susan E. Castell v. 344 Providence Rd. Realty Trust and Richard J. Wunschel</u>, C.A. No. 00-2384, Order of Justice Francis R. Fecteau, slip op. at 1 (Mass. Super. Ct., April 14, 2005). One should not overlook that because of the straightforward application of Federal Rule of Civil Procedure 17(a), the bother created by Risk Retention's motion practice can have no real effect on the merits other than a needless and ultimately pointless increase in the cost of litigation. <u>Cf.</u>

Fed. R. Civ. P. 11(b)(1).  Regardless of the perspective from which Risk Retention's alternative request is viewed, it has no merit, would make no difference even if it did, and merely delays a prompt and inexpensive determination of this action.  Fed. R. Civ. P. 1.

**Conclusion**

For the reasons set forth in this memorandum, Risk's Retention's motion for judgment on the pleadings should be denied.

**REQUEST FOR ORAL ARGUMENT**

Believing that oral argument would assist the Court in the resolution of Risk Retention's motion, a hearing is requested.  Local Rule 7.1(D).

Respectfully submitted,

344 PROVIDENCE ROAD REALTY TRUST
RICHARD J. WUNSCHEL, and
NAUTILUS INSURANCE COMPANY

By their attorneys,

*/s/ Matthew J. Walko*
*/s/ Christina Schenk-Hargrove*
_____
Matthew J. Walko (BBO No. 562172)
Christina Schenk-Hargrove (BBO No. 645164)

SMITH & DUGGAN LLP
Two Center Plaza
Boston, Massachusetts 02108-1906
(617) 228-4400

Dated:  May 20, 2005

<u>CERTIFICATE OF SERVICE</u>

The undersigned certifies service of the foregoing on May 20, 2005 in accordance with Federal Rule of Civil Procedure 5(b)(2)(D) and United States District Court for the District of Massachusetts Electronic Case Filing Administrative Procedure § E(2) as all parties, having appeared in this action through counsel admitted to practice before this Court, have been identified by the Clerk as receiving Notice of Electronic Filing.

     */s/ Christina Schenk-Hargrove*
Christina Schenk-Hargrove (BBO No. 645164)